IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, <br> as Broadcast Licensee of the December 19, 2020 <br> Saul Alvarez v. Callum Smith Championship Fight <br> Program, <br>  Plaintiff, <br> v. <br> 1) TEQUILA'S SPORTS & CLUB LLC, <br> individually, and d/b/a TEQUILAS SPORTS CLUB <br> and d/b/a TEQUILA'S SPORTS & CLUB; and <br> 2) MIGUEL A. FIGUERO, individually, and d/b/a <br> TEQUILAS SPORTS CLUB and d/b/a TEQUILA'S <br> SPORTS & CLUB, <br>  Defendants. | § § § § § § § § § § § § § § § § § § | Civil Action No. 4:23-cv-04698 |

## **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT & BRIEF IN SUPPORT**

Plaintiff G&G Closed Circuit Events, LLC ("Plaintiff") files *Plaintiff's Motion for Default Judgment & Brief in Support*.

### A.  SUMMARY OF THE ARGUMENT

1. The issued to be decided in this motion for default is whether Defendant Tequila's Sports & Club LLC, individually, and d/b/a Tequilas Sports Club and d/b/a Tequila's Sports & Club ("Defendant") violated the Federal Communications Act of 1934 for the unauthorized interception and broadcast of the closed-circuit telecast of the December 19, 2020 Saul Alvarez v. Callum Smith Championship Fight Program, including undercard or preliminary bouts (the "Event"), under either 47 U.S.C. § 553 or 47 U.S.C. § 605.

2. This is an "Anti-Piracy" case involving the Federal Communications Act of 1934, as amended (the "Communications Act"). The Communications Act combats against the piracy

of radio and television signals. *See* 47 U.S.C. §§ 553 and 605. In this case, Defendant illegally intercepted the closed-circuit telecast of the December 19, 2020 Saul Alvarez v. Callum Smith Championship Fight Program (the "Event") and exhibited the Event in Defendant's commercial establishment named Tequilas Sports Club which is located at 718 East Tidwell Road in Houston, Texas 77022 (the "Establishment"), without Plaintiff's authorization and without paying the licensing fee to Plaintiff.

3. On December 18, 2023, Plaintiff filed *Plaintiff's Original Complaint* against Defendant. *See* [Doc. 1]. Thereafter, Defendant was served with the service documents.

4. On October 28, 2024, Plaintiff filed its *Plaintiff's Request for Entry of Default* requesting the entry of default against Defendant. *See* [Doc. 24].

5. On October 28, 2024, Plaintiff dismissed its claims without prejudice against Defendant Miguel A. Figuero. *See* [Doc. 23].

6. On October 28, 2024, the clerk of the court entered default against Defendant. *See* [Doc. 26].

7. Plaintiff now requests a final default judgment against Defendant in this motion for final default judgment.

B. COMMUNICATIONS BETWEEN PLAINTIFF AND DEFENDANTS

8. To date, Defendant has not filed an answer or any other responsive pleading with the Court. Nor has Defendant made an appearance in this case. No one has contacted Plaintiff on behalf of Defendant, Defendant has not contacted Plaintiff, nor has Plaintiff been in contact with Defendant or anyone on behalf of Defendant concerning this lawsuit.

C. STATEMENT OF THE FACTS

9.  In this case, Defendant illegally intercepted the closed-circuit telecast of the Event, including undercard and preliminary bouts and commentary, and exhibited the Event in Defendants' Establishment, without authorization from Plaintiff and without paying the commercial licensing fee to Plaintiff.

10. Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. *See* Exhibit "A" at ¶ 3. Plaintiff possessed the e*xclusive* proprietary rights to exhibit and sublicense the right to exhibit the Event at commercial establishments. *See* Exhibit "A" ¶ 3; Exhibit "A-1" (page 1, ¶ 1). Through a licensing agreement with the promoter of the Event, Plaintiff was licensed to exhibit the Event at closed circuit locations, such as bars, clubs, lounges, social clubs, restaurants and other commercial establishments throughout the State of Texas. *See* Exhibit "A" at ¶¶ 3-4; Exhibit "A-1". In Texas, the Event was legally available to commercial establishments *only* through an agreement with Plaintiff. *See* Exhibit "A" at ¶ 4; Exhibit "A-1".

11. On the date of the Event, Defendant's Establishment was a commercial establishment and was open to the public. *See* Exhibit "A-2"; Exhibit "C". The Event was shown and exhibited at Defendant's Establishment. Defendant, however, did not receive permission from Plaintiff, did not receive authorization from Plaintiff, and did not enter into an agreement with Plaintiff to show the Event at the Defendant's Establishment. *See* Exhibit "A" at ¶¶ 7-8. Nor did Defendant pay Plaintiff a licensing fee in order to show the Event at the Establishment. *See* Exhibit "A" at ¶¶ 7-8.

D. ARGUMENTS & AUTHORITIES

### 1. Liability

12.     The unauthorized interception and broadcast of either cable or satellite transmissions violates either 47 U.S.C. §§ 553 or 605.[1] Accordingly, all acts of unlawful interception, receipt and broadcast of the signal of the Event by Defendant was in violation of the Federal Communications Act. *See Entm't by J&J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002) (Gilmore, J.) ("The legislative history associated with section 553 and the amendments to section 605 reveals that one of Congress's principal objectives was to discourage theft of cable services. Thus, Congress enacted a variety of penalties and remedies to 'protect the revenue of television cable companies from unauthorized reception of their transmissions.'").

13.     As Defendant owned, operated, and managed the Establishment on the night of the Event, Defendant could not have obtained the transmission of the Event had Defendant not undertaken specific wrongful actions to intercept and/or receive and broadcast the telecast. *See* Exhibit "A" at ¶ 9; Exhibit "A-2" (liquor license permit); *see also Plaintiff's Original Complaint* [Doc. 1].[2] In order for an unauthorized commercial establishment to receive a broadcast, such as

---

[1] *See, e.g., J&J Sports Prods., Inc. v. Mandell Family Ventures, LLC,* 751 F.3d 346, 353-54 (5th Cir. May 2, 2014) ("A logical reading of the two provisions reveals a clear demarcation whereby [§] 605 deals with communications traveling through the air (via radio), [and] § 553 covers communications traveling over cable wire.").

[2] By Defendant's default, the well pleaded allegations of facts in the *Complaint* are considered admitted and taken as true. *See e.g., In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability."); *J&J Sports Prods. v. El Pescador Mexican Seafood, Inc.*, 2010 U.S. Dist. LEXIS 127940 at * 4 (E.D. Tex. Oct. 27, 2010) (Mazzant, J.) ("Defendants are deemed to have admitted by default all the factual allegations in Plaintiff's Complaint. Fed. R. Civ. P. 8(b)(6)."); *EMI April Music, Inc. v. Jet Rumeurs, Inc*., 632 F. Supp. 2d 619, 623 (N.D. Tex. 2008) (Lynn, J.) ("By virtue of their default, Defendants have admitted that the factual allegations in the Complaint are true."); *J&J Sports Prods. v. Halftime Bar Group, LLC*, 2012 U.S. Dist. LEXIS 166450, at *2 (N.D. Tex. Oct. 17, 2012) ("Where, as here, Defendants have defaulted, the factual allegations of the Complaint are taken as true.").

the Event, there must be some wrongful action, such as using an unauthorized decoder, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the Event into the establishment, or moving an unauthorized decoder or satellite card from its authorized location to the establishment. *See* Exhibit "A" at ¶ 9; *see, e.g.*, *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (explaining that in order to access the telecast, it would have been necessary to use an unauthorized decoder, to illegally divert cable service or improperly relocate an authorized decoder. "In any of these scenarios, the illegality of the action would have been apparent to the perpetrator").

14. The transmission of the Event originated via satellite. *See* Exhibit "A" at ¶ 5. Accordingly, Plaintiff moves for judgment under 47 U.S.C. § 605; *see also J&J Sports Productions, Inc. v. Enola Investments, LLC and Tiffaney Enola Small*, 2020 U.S. App. LEXIS 6184, *5 (5th Cir. Feb. 28, 2020) (finding that § 605 applied after noting that the "only undisputed evidence is that the Fight was originally transmitted via satellite."); *J&J Sports Prods. v. Q Café, Inc.*, 2012 U.S. Dist. LEXIS 8700 (N.D. Tex. Jan. 25, 2012) ("Plaintiff has elected to proceed pursuant to 47 U.S.C. § 605 because the Event originated via satellite."). To establish liability under § 605, Plaintiff, as exclusive licensee, need only show that the Event was shown in Defendants' Establishment without authorization from Plaintiff. *See J&J Sports Prods. v. Little Napoli, Inc.*, 2014 U.S. Dist. LEXIS 99032 at *5 (S.D. Tex. July 22, 2014) (Miller, J.).

15. Plaintiff possessed the proprietary rights to exhibit and sublicense the Event. *See* Exhibit "A" at ¶ 3; Exhibit "A-1". Through a licensing agreement with the promoter of the Event, Plaintiff was licensed to exhibit the Event at closed circuit commercial locations throughout Texas. *See id.* Thus, the Event was legally available to commercial establishments in Texas only through an agreement with Plaintiff. *See* Exhibit "A" at ¶ 4; Exhibit "A-1".

16. On the date of the Event, without authorization from Plaintiff, Defendant intercepted and received or assisted in the interception and receipt of the transmission of the Event, and broadcast or assisted in the broadcast of the Event to the patrons of Defendant's Establishment. *See* Exhibit "A" at ¶ 7; Exhibit "A-2"; Exhibit "C". On the night of the Event, Plaintiff's Auditor entered Defendant's Establishment and personally observed the Event being exhibited on multiple televisions to the patrons inside of Defendant's Establishment. *See* Exhibit "A-2"; Exhibit "C". Specifically, while inside Defendant's Establishment, Plaintiff's Auditor personally witnessed the undercard fight between Marc Castrol and Luis Valdes. *See* Exhibit "A" at ¶ 2; Exhibit "A-2"; Exhibit "C".

### 2. Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II)

17. Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled for the violation shall be not less than $1,000.00 and not more than $10,000.00. For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendant in the amount of $10,000.00 for Defendant's violation of the Communications Act.

18. As stated *supra* and supported by the affidavits attached hereto, on the date of the Event, Defendant intercepted and received or assisted in the interception and receipt of the live telecast of the Event. Defendant then broadcast or assisted in the broadcast of the Event to the patrons at Defendant's Establishment for viewing therein. The patrons at Defendant's Establishment purchased meals and/or drinks while viewing the Event. Defendant broadcasted the Event to the patrons at Defendant's Establishment without paying any sublicense fees to Plaintiff.

19. In the instant case, as more fully discussed *infra*, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of Defendant's unlawful actions. Accordingly, Plaintiff elects to receive statutory damages. In the instant case, the lost income from the sale of the Event to Defendant's Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled for the Defendant's wrongful acts.[3]

20. In addition to the lost revenue which would have been derived from the delivery and exhibition of the Event to Defendant's Establishment and its patrons, Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Event to Defendant's Establishment and its patrons as well as the value of "business investment, business opportunities and goodwill." *See Am. Television & Commc'ns Corp. v. Floken, Ltd.,* 629 F. Supp. 1462, 1466 (M.D. Fla. 1986).

21. The *Declaration of Thomas P. Riley* details the types of damages suffered by Plaintiff. For example: (1) the loss of customers; and (2) the loss of revenue. *See* Exhibit "A" at ¶¶ 10-13. But for Defendant's unauthorized broadcast of the Events, all or some of the patrons of Defendant's Establishment would have become paying patrons and directly increased the fees paid to Plaintiff by its authorized commercial establishments. *See id.* at ¶ 10.

---

[3] *See Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.") (internal citations omitted); Order at 5, *J&J Sports Prods., Inc. v. Papagallos I, Inc.*, No. 1:08-cv-00691-SS (W.D. Tex. Apr. 17, 2009) (Sparks, J.) ("It would be difficult for the Plaintiff to prove its actual damages. The lost licensing fee would only represent a starting point for determining the Plaintiff's actual damages."); *Comcast Cable Commc'ns. v. Cabrera*, No. 04-cv-3431, 2005 U.S. Dist. LEXIS 36421, at *4 (D.N.J. Dec. 27, 2005) ("In setting the amount of statutory damages . . . the Court considers as a starting point the value of the programming services to which Defendant had access without having to pay the applicable fees.").

22.     When negotiating sublicense fees, Plaintiff generally represents to legitimate commercial establishments the locations of other authorized commercial establishments licensed to receive the programming. *See* Exhibit "A" at ¶ 13. Therefore, when an unauthorized commercial establishment intercepts, receives and broadcasts closed-circuit programming, such as the Event, Plaintiff's reputation and goodwill suffers from what appears like a misrepresentation. *See id.* Plaintiff is operating a legitimate business of the type that Congress specifically sought to protect.[4]

23.     Given the benefits that Defendant received from the broadcast of the Event and given the additional damages which Plaintiff has suffered, it is fair and reasonable to assess against Defendant and award to Plaintiff statutory damages in the amount of $10,000.00 for Defendant's violation of the Communications Act by the exhibition of the Event.

### 3.  Damages for Willful Act Under 47 U.S.C. § 605(e)(3)(C)(ii)

24.     Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(c)(ii) because Defendant's actions were willful and "for purposes of direct or indirect commercial advantage or private financial gain." In *ON/TV of Chi. v. Julien*, the Court of Appeals for the Seventh Circuit interpreted willful under the Statute as "disregard for the governing statute and an indifference to its requirements." 763 F.2d 839, 844 (7th Cir. 1985) (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

---

[4] *See Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 773 ("Congress enacted the Cable Communications Policy Act of 1984 to address 'a problem which is increasingly plaguing the cable industry – the theft of a cable service.'") (citing *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911 (6th Cir. 2001), *cert. denied*, 122 S.Ct. 1127 (2002)).

25. By Defendant's default, Defendant has admitted an intentional exhibition of the Event for financial gain.[5] Additionally, because of the absence of any way in which Defendant could have "innocently" accessed the broadcast of the Event, it is apparent that Defendant specifically and willfully acted to illegally intercept the transmissions of the Event for Defendant's commercial advantage.[6] Defendant knew that he was wrong to receive, intercept and divert the signal of the Event and to broadcast it in Defendant's Establishment. *See Jasper Grocery*, 152 F. Supp. 2d at 442; *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

26. In the instant case, Defendant's actual knowledge that Defendant's acts were wrongful should be sufficient to demonstrate that Defendant's acts were willful. *See KingVision Pay-Per-View, Ltd. v. Valles*, No. EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. Mar. 30, 2001) ("While Defendant may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of Defendant that such interception could not be had for free.").

---

[5] *See J&J Sports Prods., Inc. v. Guzman*, No. CV-F-08-0091, 2008 U.S. Dist. LEXIS 51916, at *13 (E.D. Cal. July 1, 2008) ("By her default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage.").

[6] *See Joe Hand Promotions, Inc. v. Malespin*, No. 99 Civ. 8942, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) ("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to

27. Regarding the second prong of the damages test under 47 U.S.C. § 605(e)(3)(C)(ii), it is patently obvious that Defendant's actions were "for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii); *see also* Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News, '84 Bd. Vol.-8, 4745, 4750 ("[i]t is further intended that the term 'direct or indirect commercial advantage or private financial gain' be interpreted broadly by both the courts in deciding actions. Those who willfully violate subsection (a) and directly or indirectly enjoy commercial gain from those violations, may be reached.").

28. Defendant's purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial advantage by misappropriating Plaintiff's licensed exhibitions and infringing upon Plaintiff's rights, while avoiding proper payment to Plaintiff. Courts determining willfulness damages have considered the following factors, such as here, where Defendant:

- Broadcast the Event on multiple televisions: *See 152 Bronx, L.P.*, 2014 U.S. Dist. LEXIS 42798 at *19-20 ("…courts have considered such factors as the number of televisions on which defendants broadcast the Event…"). *See* Exhibit "A-2"; Exhibit "C".

- Broadcasting the Event on a big-screen television: *See Joe Hand Promotions, Inc. v. Villalobos*, 2009 U.S. Dist. LEXIS 85183 at *6 (E.D. Cal. Sept. 16, 2009) ("Given the size of the establishment at issue, its location both in a relatively urban city and adjacent to an even larger urban city and the fact that the Program was shown on a large projection screen, the Court finds that the violations likely had more than a minimal impact." The Court awarded damages totaling $60,000.). *See* Exhibit "A-2"; Exhibit "C".

- Advertising the Event: *See J&J Sports Productions, Inc. v. Garcia*, 2009 U.S. Dist. LEXIS 72233 at *12 (S.D. Tex. Aug. 14, 2009) (Harmon, J.) ("Defendant openly advertised the Event on a marquee outside its establishment which serves

---

their commercial establishments. The Court finds that employing any one of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.").

as evidence that the Event was shown for the purpose of commercial advantage or private financial gains."). *See* Exhibit "A-2"; Exhibit "D".

- Charging a cover: *See Kingvision Pay-Per-View, Ltd. v. Zalazar*, 2009 U.S. Dist. LEXIS 71559, at *14 (S.D.N.Y. June 11, 2009) (charging of a "cover charge" is evidence of willfulness and commercial advantage); *Garden City Boxing Club, Inc. v. Sacks*, 2008 U.S. Dist. LEXIS 30332, at *6-7 (S.D. Tex. Apr. 10, 2008) (Tagle, J.) ("The Event was rebroadcast to the bar's customers who paid a twenty dollar ($20) cover charge; therefore, this act of cable piracy was for the purpose of direct or indirect commercial advantage."). *See* Exhibit "A-2".

- Sold food and beverages: *See Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 2014 U.S. Dist. LEXIS 42798 at *20 (S.D. Tex. 2014) (Harmon, J.) ("…courts have considered such factors as … the food and beverages it sold to customers…"); *Joe Hand Promotions, Inc. v. Chios, Inc.*, 2012 U.S. Dist. LEXIS 104979 at *13-15 (S.D. Tex. July 27, 2012) (Hoyt, J.), *aff'd* 544 Fed. Appx. 444 (5th Cir. Tex. 2013). *See* Exhibit "C".

- Showed the Event in an urban area: *See 152 Bronx, L.P.*, 2014 U.S. Dist. LEXIS 42798 at *20 ("…courts have considered such factors as … whether it was broadcast in a relatively urban city where the broadcast would have more than a minimal impact…"). *See* Exhibit "A-2".

- Showing the Event in an Establishment in good condition: See *J&J Sports Prods. v. Tilakamonkul*, 2011 U.S. Dist. LEXIS 62120 at *9-10 (E.D. Cal. June 10, 2011). *See* Exhibit "A-2".

29. As a willful violator of the Communications Act, Defendant must be held accountable for a substantial amount above the market value of the sublicense fees to broadcast the Event. Otherwise, other commercial establishments "would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market." *See Fallici v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983). Thus, in the instant case, the award of additional damages must be sufficiently significant to deter Defendant and other unauthorized commercial establishments from stealing protected Communications.

30. Therefore, in addition to the reasons set forth *supra*, the minimum amount of $50,000.00 (or five (5) times the amount of statutory damages, if $10,000.00 in statutory

damages awarded) should be awarded to Plaintiff pursuant to Section 605(e)(3)(C)(ii). *See Joe Hand Promotions, Inc. v. Chios, Inc.*, 2012 U.S. Dist. LEXIS 104979 (S.D. Tex. July 27, 2012) (Hoyt, J.), *aff'd* 544 Fed. Appx. 444 (5th Cir. Tex. 2013) ("Generally, it is reasonable to increase an actual or statutory damages award by a multiplier to penalize Defendants for willful acts."); *J&J Sports Prods. v. Rivera*, 2014 U.S. Dist. LEXIS 95853 *11 (S.D. Tex. July 14, 2014) (Harmon, J.) ("Regarding additional damages for willful violations, the case law reviewed by this court suggests that a multiplier of three to eight times the statutory damages is appropriate.").

31.  The damages requested by Plaintiff is inline and consistent with one of the most commonly used statutory damages calculation methods used in the Houston Division of the Southern District of Texas, sometimes referred to as the middle of the statute method. Under this damage calculation method, the maximum statutory damage amount of $10,000.00 is awarded. Then, absent exceptional circumstances, the court then awards punitive damages in an amount that ranges between two times ($20,000.00) and five times ($50,000.00) the amount of the statutory damage award, which is the middle of the range of damages for a willful violation (with $100,000.00 being the maximum). *See* 47 U.S.C. § 605(e)(3)(c)(ii). This method is particularly appropriate when a defendant fails to offer mitigating evidence.

### 4. Attorney's Fees

32.  Plaintiff requests an award of attorney's fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) and as provided in the *Declaration of David M. Diaz*. *See* Exhibit "B". Pursuant to sections 605(e)(3)(B)(iii), the award of attorney's fees is mandatory. Section 605(e)(3)(B)(iii) states, "[t]he Court... shall direct the recovery of full costs, including awarding reasonable

attorneys' fees..." Plaintiff seeks an award of one-third[7] of the actual and additional damages awarded to Plaintiff for the prosecution of this action through the final judgment requested or, alternatively, attorney's fees based on the hourly time presented. *See* Exhibit "B". Plaintiff also seeks a contingent award of attorney's fees in the event certain post-trial, pre-appeal and appellate services, in the event such services are rendered and do not lead to the reversal of the Judgment as provided in the *Declaration of David M. Diaz*.[8] *See* Exhibit "B".

### E. CONCLUSION & PRAYER

33.     The evidence and argument presented by Plaintiff establishes that Defendant illegally intercepted the closed-circuit telecast of the Event and that Defendant exhibited the Event in their commercial Establishment without authorization from Plaintiff and without paying the commercial licensing fee to Plaintiff. As a result, Defendant is liable for violating the Communications Act. For these reasons, Plaintiff respectfully requests that the Court sign and cause to be entered a final default judgment for Plaintiff against Defendant awarding Plaintiff:

>   (1)     Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendant in the amount of $10,000.00;

---

[7] Courts have recognized that a one-third contingent fee is reasonable for the prosecution of anti-piracy cases. *See* the *Memorandum Opinion and Order* in *Entm't by J&J, Inc. v. Nuno*, Civil Action No. 3:01-CV-0631-H, 2001 U.S. Dist. LEXIS 11050, at *2 (N.D. Tex. August 1, 2001) (Sanders, J.); *Entm't by J&J, Inc. v. David Cantu, Individually and d/b/a R&R Sports Club*, No. 3:01-CV-1803-R, (N.D. Tex. Dec., 10, 2002) (Buchmeyer, J.) (*Final Judgment*) f.n.2 ("The Court takes judicial notice that an award of attorney's fees in the amount of one-third (1/3) of the damages awarded herein is reasonable and necessary for this type of action."). In addition, such an award prevents the request for attorney's fees from becoming an unduly complicated matter for the Court. *See Nisby v. Comm'rs Court of Jefferson*, 798 F.2d 134, 137-38 (5th Cir. 1986) (Hinojosa, J., concurring) ("In a system burdened with increased caseloads, it is inappropriate and unnecessary to make a request for attorney's fees an unduly complex matter. The attorney's fees issue should not become a second complicated lawsuit. To determine the amount of an attorney's fee award, district courts should be given standards which are fair, simple and easily reviewable on appeal for abuse of discretion").

[8] The Court may award fees for appellate work on a contingent basis. *See Lyn-Lea Travel Corp. v. American Airlines, Inc.*, No. 3:96-CV-2068, 2000 U.S. Dist. LEXIS 14487, at *33 (N.D. Tex. Sept. 29, 2000), *vacated on other grounds*, 283 F.2d 282 (5th Cir. 2002) (citing *Norris v. Hartmax Specialty Stores, Inc.*, 913 F.2d 253, 257 (5th Cir. 1990) ("A long and consistent line of Fifth Circuit precedent allows awards of attorney's fees for both trial and appellate work.") (internal citations omitted)).

(2) Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendant in the amount of $50,000.00;

(3) Attorneys' fees in the amount of one-third (1/3) of recovery, or alternatively the hourly time presented in the *Declaration of David M. Diaz* (for prosecution of this case through default judgment); along with attorney's fees for post-trial and appellate services;

(4) Costs and post-judgment interest at the highest lawful rate; and

(5) Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

By: /s/
David M. Diaz
State Bar No. 24012528
Southern District Bar No. 889588
ddiaz@jonesdavis.com
Attorney-in-charge

JONES, DAVIS & JACKSON, PC
15110 N. Dallas Parkway, Suite 300
Dallas, Texas 75248
(972) 733-3117 – Telephone

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2025, I mailed by United States Postal Service a copy of this document to the following non-CM/ECF participant:

Tequila's Sports & Club LLC      VIA U.S. CERTIFIED MAIL, RRR
c/o its registered agent, Miguel A. Figuero
718 E. Tidwell Rd.
Houston, Texas 77022

DEFENDANT

By: /s/ _____
           David M. Diaz